**UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff,**

v.

**DEALERS LEASING, INC., and Dealers Leasing Used Vehicles Inc., Defendants.**

**No. 00–2266–JWL.**

United States District Court, D. Kansas.

March 28, 2001.

Melanie D. Caro, Office of U.S. Attorney, Kansas City, KS, for U.S.

Danny C. Trent, Perry & Trent, L.L.C., Bonner Springs, KS, for Sandra Mann.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter comes before the court on defendants' motion for summary judgment (Doc. 24) and plaintiff's motion for summary judgment (Doc. 22). For the reasons set out below, the plaintiff's motion is granted and the defendants' motion is denied.

## I. Uncontroverted Facts

United States Fidelity and Guaranty Company ("USF & G") is incorporated in Maryland and has its principal place of business in Minnesota. Dealers Leasing, Inc. and Dealers Leasing Used Vehicles, Inc. (referred to hereafter jointly as "Dealers Leasing") are Kansas corporations with their principal place of business in Kansas. Dealers Leasing and USF & G contracted for liability insurance effective July 1, 1994, through July 1, 1995. On December 15, 1997, a lawsuit was filed in Jackson County, Missouri, naming Dealers Leasing as defendants. The complaint charged Dealers Leasing with violations of the Missouri Merchandising Practices Act, civil conspiracy, fraud, breach of express and implied warranties, negligence, and negligent misrepresentations. The alleged misconduct occurred between July 1, 1994, and July 1, 1995.

The complaint alleged that Dealers Leasing experienced "repeated severe" problems with a minivan that it owned and discovered that, before the minivan was purchased, it had been involved in an accident, sold as salvage and reconstructed. According to the complaint, the reconstructed minivan was actually two vehicles welded together into a single frame and Dealers Leasing "knew or should have known of the minivan's identity as two vehicles and the lack of information about the true mileage of both sections of the minivan." Dealers Leasing sold the minivan through Metro Auto Auction in Lees Summit, Missouri to Morse Chevrolet, Inc. ("Morse") of Overland Park, Kansas. According to the complaint, Dealers Leasing certified that the mileage on the minivan was 18,486 and did not disclose the minivan's "wreck damage, reconstruction history or innumerable problems." The plaintiff in the Jackson County case purchased the minivan from Morse and experienced numerous problems with the minivan.

The complaint sought damages from Morse and Dealers Leasing including "the lost value of the minivan, the cost of making various repairs to the minivan, finance charges, taxes, insurance premiums, warranty premiums, expenses" as well as "lost use of the minivan" and "mental pain, anguish, emotional distress, embarrassment, humiliation, and inconvenience."

Dealers Leasing, through its insurance agent, requested that USF & G defend the claim and pay any judgment. USF & G declined coverage. Dealers Leasing proceeded without the assistance of USF & G. At the pretrial conference, the trial judge ruled that the case would proceed to trial on only the claims of civil conspiracy, fraud, negligence and negligent misrepresentation. After opening statements at trial, the parties agreed to settle the lawsuit for $350,000.

USF & G filed this lawsuit seeking a declaration from the court that it had no duty to defend the lawsuit or to pay any judgment.

## II. Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The parties agree that there are no material questions of fact to be resolved. The only question presented by the parties' summary judgment motions is the meaning of the insurance contract.

The court is not aware of the facts surrounding the formation of the insurance contract, but will apply Kansas law because of the apparent consensus of the parties that Kansas law is applicable. Under Kansas law, the interpretation or construction and meaning and legal effect of written instruments are matters of law exclusively for the court and not questions

of fact for determination by a jury. *See Federal Land Bank of Wichita v. Krug,* 253 Kan. 307, 311, 856 P.2d 111 (1993). Insurance policies are "construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense." *First Financial Ins. Co. v. Bugg,* 265 Kan. 690, 694, 962 P.2d 515 (1998). Courts "should not strain to create an ambiguity where, in common sense, there is none." *Id.*

 "The duty to defend and whether the policy provides coverage are not necessarily coextensive." *See Spivey v. Safeco Insurance Co.,* 254 Kan. 237, 246, 865 P.2d 182 (1993). An insurer has a duty to defend if there is a potential for liability under the contract. *Id.* at 245, 865 P.2d 182. "Where a petition alleges an act that is clearly not covered, there would be no potential of liability under the policy." *Id.* at 246, 865 P.2d 182.

III. Discussion

Dealers Leasing argues that the "Commercial General Liability" section and the "Commercial Umbrella Liability" section of its liability insurance contract with USF & G provides coverage for the claims asserted in the Jackson County lawsuit. The Commercial General Liability section provides coverage for "bodily injury" or "property damage" that is caused by an "occurrence." An occurrence is defined as "an accident including continuous or repeated exposure to substantially the same general harmful conditions." The Commercial Umbrella Liability section provides coverage for "bodily injury" or "property damage" that is caused by an "incident." An incident is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in 'bodily injury' or 'property damage.' "

Dealers Leasing asserts that USF & G was required to defend the Jackson County lawsuit and pay any judgment against it because the Jackson County complaint included claims for negligence and negligent misrepresentation. USF & G responds by arguing that the insurance contract only covers damages that are "caused by" an occurrence or an incident. The court agrees that the alleged negligence and negligent misrepresentation did not cause the damages listed in the complaint.

The Kansas Court of Appeals addressed the issue of causation in *Bush v. Shoemaker-Beal,* 26 Kan.App.2d 183, 987 P.2d 1103 (1999). In *Bush,* the plaintiffs purchased a home from the defendants with undisclosed termite damage and won a $100,000 judgment for negligent misrepresentation. The plaintiffs then sought to recover the judgment from the defendants' insurer. The court of appeals concluded that the negligent misrepresentations "were not the cause of any property damage; simply put, the termites, not the [defendants'] misrepresentations, caused the property damage." *Id.* at 184, 987 P.2d 1103. The court concluded, therefore, that the insurance policy covering "property damage" caused by an "occurrence" did not cover the allegation of negligent misrepresentations.

The *Bush* court cited *State Farm Fire and Casualty Co. v. Brewer,* 914 F.Supp. 140, 142 (S.D.Miss.1996), for support of its holding, saying that "[w]e agree with the reasoning in *Brewer.*" In *Brewer,* like *Bush,* the underlying litigation involved the buyer of a home with termite damage alleging that the sellers negligently misrepresented that the home was free of termite damage. The *Brewer* court reasoned that the damage to the home was caused by termites, not by misrepresentations, and that the only damage flowing from the misrepresentations were econom-

ic and not covered by the insurance policy. *Id.* at 142–43. The *Brewer* court noted that other jurisdictions considering this question are "virtually unanimous in their holding" that property damage is not caused by negligent misrepresentation and that "the only cognizable damages from such torts are economic and contractual in nature and as such do not fall within the coverage afforded by" liability insurance policies. *Id.* at 142.

One year prior to the *Bush* decision, in *Lininger v. State Farm Fire and Casulty Co.,* 1998 WL 684239 (D.Kan. Sept.11, 1998), Judge Vratil of this court reached the same conclusion. In the underlying litigation in *Lininger,* the buyers of a home recovered against the sellers for negligently misrepresenting that there were not any problems with the swimming pool or plumbing. After purchasing the home, the buyers discovered cracks in the pool and plumbing problems. The sellers' insurance contract provided coverage for property damage or bodily injury resulting from occurrences. According to the court, "there has been no such accident identified which caused damage to the pool ... Rather the [plaintiffs] contended that the pool and plumbing had existing problems which the [defendants] negligently misrepresented." *Id.* at *3. The court, therefore, held that the sellers' insurance policy did not cover the allegation of negligent misrepresentation.

■ The plaintiff in the Jackson County case alleged that Dealers Leasing was negligent in failing to discover safety defects in the minivan, failing to disclose the history of the minivan, and failing to conduct or negligently conducting a safety inspection. The plaintiff also alleged that Dealers Leasing's conduct "constituted negligent misrepresentation" because it failed "to exercise reasonable care or competence in obtaining or communicating the information, including but not limited to misrepre-

sentations about the identity and mileage of the minivan." The complaint does not allege that negligence or negligent misrepresentations by Dealers Leasing caused the damage to the minivan. Instead, the complaint asserts that the minivan was in poor condition because it was involved in an accident and was negligently reconstructed.

Like the termite damage to the house in *Bush,* the poor condition of the minivan was not caused by negligence or negligent misrepresentations by Dealers Leasing. Instead, the wreck and negligent reconstruction of the minivan caused it to be in poor condition. Because these damages were not caused by negligence or negligent misrepresentations by Dealers Leasing, they are not covered under the insurance contract. Any damage caused by the alleged negligence or negligent misrepresentations was economic, as opposed to "property damage" or "personal injury," because it caused the plaintiff to pay more for the minivan than it was worth. *See Brewer,* 914 F.Supp. at 142; *Lininger,* 1998 WL 684239 at *3. Economic damages are not covered under the insurance contract.

At the hearing on the summary judgment motions, Dealers Leasing attempted to distinguish *Bush* on the basis that the underlying complaint also included claims for loss of use and emotional injuries. According to Dealers Leasing, the loss of use and emotional injuries were caused by the plaintiff purchasing a minivan in poor condition and not by the condition of the minivan. The distinction does not hold up to scrutiny. While the plaintiff would not have suffered the alleged loss of use and emotional injuries had she not purchased the minivan, these damages were caused by the condition of the minivan. Counsel for Dealers Leasing admitted at the hearing that the "mental pain,

anguish, emotional distress, embarrassment, humiliation, and inconvenience" alleged in the underlying litigation were caused by the poor condition of the minivan. Likewise, the alleged loss of use of the minivan was caused by its poor condition and need for constant repair.

This court is obligated to determine issues of Kansas law as it believes the Kansas Supreme Court would determine them. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir.1984). While this court is not required to follow the decisions of the Kansas Court of Appeals, *see Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), it finds that the *Bush* decision is persuasive evidence of how the Kansas Supreme Court would rule. The *Bush* decision is particularly persuasive in light of the fact that it is the law followed by a majority of jurisdictions. *See Brewer*, 914 F.Supp. at 142. A judge of this court was faced with the same issue one year before the *Bush* decision and reached the same conclusion applying Kansas law as did the Kansas Court of Appeals. *See Lininger*, 1998 WL 684239. For all of these reasons, this court concludes that the Kansas Supreme Court would hold that the damages alleged in the Jackson County case were not caused by the alleged negligence and negligent misrepresentations.

USF & G also argues that the alleged negligence and negligent misrepresentations do not constitute an "occurrence" or an "incident." Both terms are defined in the contract as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The contract does not define "accident." "The absence of any definition of the term 'accident' in a liability insurance policy merely means that an interpretation by law shall apply rather than an interpretation by contractual language. Where the term is not defined in the policy, it must be interpreted in its usual, ordinary, and popular sense." *Brumley v. Lee*, 265 Kan. 810, 963 P.2d 1224, Syl. 6 (1998). According to Kansas case law the generally accepted meaning of an accident is "an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." *Harris v. Richards*, 254 Kan. 549, 553, 867 P.2d 325 (1994).

According to USF & G, the allegations of negligent misrepresentations and negligence in inspecting the minivan and reporting the history of the minivan do not fit the generally accepted meaning of an "accident." The Kansas Supreme Court has not addressed the issue of whether negligent misrepresentation or negligence in discovering and reporting safety defects constitutes an "accident." This court believes that, if faced with the issue, the Kansas Supreme Court would conclude that such negligence and negligent misrepresentation does not constitute an "accident." While negligence often leads to an accident, negligent behavior is not itself an "accident." *See Couch on Insurance* § 126:26 (3d ed.) ("The word 'accident' implies a misfortune with concomitant damage to a victim, and not to the negligence which eventually results in that misfortune."). This interpretation is consistent with the generally accepted definition of an "accident" set out by the Kansas Supreme Court. Negligent conduct itself is not an undesigned, sudden, or unexpected event of an afflictive or unfortunate character, but often the cause of such an event. *See Neale Construction Co. v. United States Fidelity & Guaranty Co.*, 199 F.2d 591, 592 (10th Cir.1952) (holding that negligent construction is not "sudden, unexpected or unanticipated" and does not constitute an "accident"); *ERA Franchise Systems, Inc. v. Northern Ins. Co. of New York*, 32 F.Supp.2d 1254, 1258 (D.Kan.

1998) (holding that the claim that the defendants negligently provided investment advice did not constitute an "accident"); *Maryland Casualty Co. v. Mike Miller Companies, Inc.*, 715 F.Supp. 321, 323 (D.Kan.1989) (noting that the court doubts that alleged negligence in analyzing soil "could be considered an 'accident' as that term is used in the policy"). The same analysis applies to the alleged negligence and negligent misrepresentations here.

In the Jackson County lawsuit, there was no allegation of an accident that resulted from the alleged negligence or negligent misrepresentations. Dealers Leasing, instead, suggests to this court that the negligence and negligent misrepresentations were "accidents." This court does not believe that the alleged negligent behavior, including negligent misrepresentations, fits the generally accepted definition of "accident." Instead, the events that often result from negligent behavior fit the ordinary meaning of "accident." For example, had the minivan been involved in a wreck, an accident would have occurred as a result of the negligent reconstruction of the minivan.[1]

Dealers Leasing agreed at the hearing that the allegations of negligence and negligent misrepresentations did not describe a "sudden or unexpected" event. In essence, Dealers Leasing conceded its argument that negligence and negligent misrepresentation fit the generally accepted meaning of an accident. Dealers Leasing, instead, pointed out to the court that the definitions of "occurrence" and "incident" went beyond "an accident" to include "continuous or repeated exposure to substantially the same general harmful conditions." The purpose of including this qualification to the definitions of "occurrence" and "incident" is "to confirm that the insured event was not limited to sudden events, but also included 'personal injuries and property damage sustained as a result of a gradual process or as the result of repeated exposures to the same or similar conditions.'" Ostranger & Newman, *Handbook on Insurance Coverage Disputes* § 8.03[a] (8th ed.1995). The qualification extends the definition of an "occurrence" beyond the generally accepted definition of an "accident." However, this qualification does not help Dealers Leasing. For the same reasons that negligence is not itself an "accident," negligence is also not "continuous or repeated exposure to harmful conditions." Instead, negligence can lead to such harmful exposure.[2]

The allegations by the plaintiff in the underlying litigation did not include claims that an "occurrence" or "incident" caused "property loss" or "bodily injury." Instead, the complaint alleged acts that are clearly not covered by the insurance contract and, therefore, USF & G had no duty to defend the claim or pay any judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that the defendants' motion for summary judgment (Doc. 24) is denied and plaintiff's motion for summary judgment (Doc. 22) is granted.

---

1. Note that the accident would have been caused by the poor condition of the minivan from its negligent reconstruction, not by any negligence or negligent misrepresentations by Dealers Leasing.

2. Equally significant is that in the Jackson County case there was no allegation of continuous or repeated exposure to harmful conditions.