# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 03-3989 and 03-4001

_____

| | | |
|---|---|---|
| Timothy Miller and Daniel Miller, | * | |
| | * | |
| Plaintiffs-Appellants, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the |
| Northwestern Mutual Life Insurance | * | District of Minnesota. |
| Company, being sued as The | * | |
| Northwestern Mutual Life Insurance | * | |
| Company, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: October 18, 2004
Filed: December 23, 2004

_____

Before COLLOTON, LAY, and BENTON, Circuit Judges.

_____

LAY, Circuit Judge.

Timothy Miller and Daniel Miller are brothers who operated an architectural and construction company (Miller Architects & Builders, Inc.) as equal owners. Daniel served as president and Timothy served as chairperson. Timothy's principal duties included (1) creating an agenda for, and presiding over, advisory board meetings; (2) marketing; and (3) acting as development consultant for new client accounts.

On April 27, 1998, Timothy first sought treatment for depression from Maureen Kelly (Kelly), a psychotherapist. By May 26, 1998, Timothy was hospitalized at the request of his psychiatrist, Dr. Charles McCafferty (McCafferty). Timothy was discharged on June 2, 1998. At that time, McCafferty prescribed a treatment plan for depression. Timothy saw either McCafferty or Kelly eighteen times in 1998 after being discharged, and he continued treatment in 1999, 2000, 2001, and 2002. Timothy continues to receive care from McCafferty to this day.

In November 2000, Timothy submitted a claim to his insurer, Northwestern Mutual Life Insurance Company ("Northwestern"), for benefits under his Disability Income Policy. He identified May 26, 1998 (the day he was hospitalized), as his disability onset date. Shortly thereafter, Daniel agreed to buy Timothy's share of the business, and Daniel submitted a claim for benefits under a separate insurance policy with Northwestern – a Buyout Expense Reimbursement Policy, wherein Daniel was the owner and Timothy was the insured.

Both Northwestern policies contained a provision requiring that Timothy be "totally disabled" in order for the policyholder to recover. The Buyout Expense Reimbursement Policy stated:

> The Insured is totally disabled when unable to perform the *principal duties* of the regular occupation, *and* not working in *any* capacity in the Business.

Buyout Expense Reimbursement Policy at 5 (Jt. App. at A-49) (emphasis added). In contrast, the Disability Income Policy stated:

> Until the end of the Initial Period [of disability], the Insured is totally disabled when unable to perform the principal duties of the regular occupation. . . . *If the insured can perform one or more of the principal duties of the regular occupation, the Insured is not totally disabled*; however, the Insured may qualify as partially disabled.

-2-

Disability Income Policy at 5 (Jt. App. at A-11) (emphasis added).  Northwestern relied on the "total disability" provisions in either contract as grounds to deny benefits to Timothy (for disability) and Daniel (for buyout expenses).[1]  However, Northwestern did find that  Timothy was partially disabled and paid him $15,000 under the Disability Income Policy.  Mem. and Order of U.S. District Court Judge Paul Magnuson at 3.

The Miller brothers brought separate suits against Northwestern for breach of contract and sought declaratory relief and damages in Minnesota state court. Northwestern removed the case to federal court.  Minnesota state law governs the dispute.

The district court granted Northwestern's motions for summary judgment against both Plaintiffs.  Since the court found Timothy was able to perform at least one of his principal duties, it held that there was no genuine issue as to whether Timothy was totally disabled within the meaning of either contract.  The district court emphasized that "[t]his is not a situation where Timothy only performed 'trivial' tasks of the business," and therefore could still be deemed totally disabled under Minnesota law.  *See id.* at 8.[2]

---

[1]In addition to "total disability," both Northwestern contracts required that Timothy be under the regular care of a licensed physician during disability.  The district court opinion did not discuss this element.  Yet, on appeal, the parties dispute what Dr. McCafferty's treatment plan for Timothy entailed, whether Timothy followed this plan, and whether the frequency of his treatment visits rose to the level of "regular care" required by the contracts.  We do not address these arguments since they were not relevant to the district court's decision.

[2]Summary judgment should never be used to denigrate the right of trial by jury. Summary judgment should be utilized only in the case where no material facts are genuinely disputed.  In the present case, Timothy urges that material facts are disputed. He claims his work performance constitutes under-performance.  To some extent, this is true.  However, the Millers largely misread and stretch Minnesota

The Millers appealed, claiming the district court erred in granting summary judgment on the ground that Timothy was not "totally disabled" within the meaning of either policy. Their primary argument is that the trial court failed to consider what it means to meaningfully "perform" a job duty. Although the Millers concede that Timothy returned or attempted to return to work after being hospitalized, they claim that evidence showed Timothy was unable to function at the pre-disability level. They further argue that this minimum showing is sufficient to *entitle* a claimant to present that evidence to a fact-finder, who then determines whether that post-disability level of functioning in fact constitutes "total disability" within the meaning of Minnesota law.

The Millers also claim the phrase "total disability" is inherently ambiguous under Minnesota law according to *Weum v. Mutual Benefit Health & Accident Ass'n,* 54 N.W. 2d 20 (Minn. 1952). They urge this court to adopt the definition of "total disability" used in the *Weum* decision, to-wit: that a person is totally disabled for insurance purposes if she or he is "unable to perform the *substantial and material acts* necessary to the successful prosecution of his occupation or employment *in the customary and usual way*." *Id.* at 26 (emphasis added). Had the district court applied the *Weum* standard, the Millers argue, a genuine issue would have existed as to whether Timothy's reduced capacity to work was equivalent to "total disability."

We disagree with these arguments. First, neither the *Weum* case nor the plain language of the contract at issue here reveal an ambiguity. The contract in *Weum*, which was issued by Mutual Benefit Health & Accident Association (MBHA), required that the insured be "wholly and continuously" disabled before disability benefits could be triggered. *Id.* at 22. Because a literal interpretation of that contract language was deemed to require "complete helplessness," *id.* at 29, the *Weum* court reasoned that "[s]ome limitation upon the literal terms is obviously necessary in order

precedent. *See infra* at 4-5 (discussing Minnesota law).

to give a realistic meaning to the words and give to the insured some measure of the protection which he bargained and paid for." *Id.* Since no realistic limitations appeared on the face of this contract language, the *Weum* court declared the contract "ambiguous," 54 N.W.2d at 29, and affirmed the district court's jury instruction. The jury instruction defined disability as a state where one is "unable to perform the substantial and material acts necessary to the successful prosecution of [an] occupation or employment in the customary and usual way." *Id*. at 26.

In light of this summary, it is evident that *Weum* provides little aid to the Millers. The original contract language in *Weum* was materially different from language used in Northwestern's contracts. MBHA's contract required the insured to be "wholly and continuously disabled" before benefits would issue; here, the insured need only be unable to perform "the *principal* duties of the *regular* occupation." It cannot be reasonably argued that these two contract provisions are equivalent. The language used in the Northwestern contracts is actually more similar to the limiting construction that the *Weum* court imposed upon MBHA's contract than it is to the plain meaning of MBHA's contract. Thus, we reject the Millers' contention that a literal interpretation of the Northwestern contract language requires utter helplessness, as did MBHA's original contract language.

Other Minnesota cases cited by the Millers in support of their proposition that the Northwestern contracts require "utter helplessness" likewise involved materially different contract language. *See Laidlaw v. Commercial Ins. Co. of Newark*, 255 N.W. 2d 807, 811-12 (Minn. 1977) (involving interpretation of the phrase "period for which the (Company) is liable" and holding that an insured's income is not relevant to a finding of total disability); *Blazek v. North Am. Life & Cas. Co.*, 87 N.W. 2d 36, 40 (Minn. 1957) (contract requiring an insured to be "totally and continuously disable[d]" and unable to perform "every duty pertaining to his occupation" before disability benefits could issue). Only *Dowdle v. Nat'l Life Ins. Co.*, 2003 U.S. Dist. LEXIS 15093 (D. Minn. 2003), defined total disability as a condition wherein an

insured is "unable to perform the material and substantial duties of an occupation." However, the original contract language provided that definition. 2003 U.S. Dist. LEXIS 15093 at *3.

In light of the fact that the Northwestern contracts do not require utter helplessness, neither Minnesota law nor the Millers explain why this court should impose a construction on the contract language. Rather, the plain language of the contracts supports the district court's ruling that Timothy must be unable to perform all principal duties of his regular occupation in order to qualify as "totally disabled." *See McOsker v. Paul Revere Life Ins*. Co., 279 F.3d 586, 588 (8th Cir. 2002). The Millers reject *McOsker* on the grounds that it is a federal case that failed to apply Minnesota law in any substantive manner. This is not determinative. The facts and contract language at issue in *McOsker* were very similar to those involved here, and the court's analysis and reasoning were sound. As such, *McOsker* is persuasive authority.

Comparing the facts to the plain language of the contract, it appears that Timothy was not "totally disabled." He was able to perform at least one of the principal duties of his regular occupation after the onset of his depression. For instance, it is undisputed that Timothy was at times able to draft agendas for, and preside over, board meetings for the company. Additionally, there were times where Timothy was able to engage in sales efforts by meeting with clients, issuing marketing letters or special appearances, and making telephone contacts. While it is indisputable that Timothy's level of sales productivity dropped substantially and board meetings were held on an infrequent basis, it still cannot be said that he was unable to perform at least one of the principal duties of his regular occupation.

Our opinion today does not stand for the proposition that clinical depression, as opposed to a physical injury or ailment, is an inappropriate basis upon which to allege total disability. However, the evidence in this case does not show that Timothy

has reached such a point. Timothy clearly suffers from depression and experienced a severe suicidal episode, from which he has not fully recovered. It seems as though the post-hospitalization period has been characterized by moments of improvement – during which Timothy attempted to return to work and did in fact perform some of his principal duties – and moments of reversion, during which he fled from his responsibilities and avoided any pressures whatsoever, as his brief alleges. We acknowledge that Timothy's decision-making may not yet be fully within his control, that his volatile state makes him an unreliable co-owner and poor employee, and that the purchase of Timothy's share in the business was probably necessary to protect the business. Still, we cannot say on the facts presented that Timothy's condition during the post-hospitalization period was so severe as to constitute a state of "total disability" within the meaning of the Northwestern contract language.

For these reasons, the judgment of the district court is AFFIRMED.

_____