# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1963

_____

| | | |
|---|---|---|
| Donald Raines and Carole Raines, | * | |
| | * | |
| Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Safeco Insurance Company of America, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 11, 2011
Filed: March 21, 2011

_____

Before COLLOTON, GRUENDER, and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

On April 23, 2001, Donald and Carole Raines ("the Raineses") entered into a contract to sell their house and real property in Overland Park, Kansas ("Overland Park property"), to Maurya J. Lyons. The closing took place on May 31, 2001. At the time the Raineses entered into the sales contract, they owned a homeowners' policy issued by Safeco Insurance Company of America ("Safeco"). This policy, which provided dwelling and personal property coverage as well as personal liability coverage, was cancelled effective May 23, 2001. Safeco then issued the Raineses a personal umbrella insurance policy, with a policy period of May 23, 2001, to May 23, 2002.

Within three months after the closing, Lyons filed a complaint in Kansas state court against the Raineses ("underlying suit"). The second amended petition for damages listed three causes of action—fraud, negligent misrepresentation, and breach of contract—arising from the Raineses' alleged "statements and concealments" regarding certain defects in the Overland Park property.[1] Specifically, Lyons alleged that the Raineses misrepresented and failed to disclose incidents of "water leakage and dampness in the basement and . . . repairs made to the basement."

The Raineses tendered the underlying suit to Safeco for defense and indemnity under both the homeowners' policy and the umbrella policy. Safeco denied coverage and refused to defend or indemnify the Raineses. Thereafter, the Raineses retained counsel at their own expense. They prevailed in the underlying suit on summary judgment and ultimately on appeal. The Raineses then initiated the present action against Safeco in Missouri state court, alleging breach of the insurance policies for failure to defend the underlying suit and seeking the fees and other expenses incurred in their defense of the underlying suit. In addition, they sought an award of attorney's fees incurred in the present action pursuant to Kan. Stat. Ann. § 40-256. Safeco removed the action to federal court, based on diversity jurisdiction. Interpreting the policies under Kansas law, the district court[2] granted Safeco's motion for summary judgment. The Raineses now appeal.

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 528 (8th Cir. 2009) (quoting *J.E. Jones Constr. Co. v.*

---

[1] Lyons's petition also included claims, not relevant here, against the realty company and agents involved in the conveyance.

[2] The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

*Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007)). We review a district court's grant of summary judgment *de novo*, including its interpretation of state law. *St. Paul Fire & Marine Ins. Co. v. Schrum*, 149 F.3d 878, 880 (8th Cir. 1998). The parties do not dispute that Kansas law governs our interpretation of the policies. When determining the state-law issue of insurance policy coverage, we are bound in our construction of Kansas law by the decisions of the state's supreme court. *See id.* Absent controlling Kansas Supreme Court authority, a federal court sitting in diversity must attempt to predict what that court would decide if it were to address the issue. *See Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 612 (8th Cir. 2009). In pursuing this endeavor, we may consider "relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." *Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1268 (8th Cir. 1997) (quoting *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 729 (8th Cir. 1995)). Thus,

> [w]here an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

Under Kansas law, insurance policies are "construed according to the sense and meaning of the terms used, and if the language is clear and unambiguous, it must be taken in its plain, ordinary, and popular sense." *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 519 (Kan. 1998). "[C]ourts should not strain to create an ambiguity where, in common sense, there is none." *Id.* An insurer's duty to defend and its obligation to provide coverage under the policy are not necessarily coextensive. *Spivey v. Safeco Ins. Co.*, 865 P.2d 182, 188 (Kan. 1993). The duty to defend is broader, arising "whenever there is a 'potential of liability' under the policy." *Id.* Whether the possibility of coverage exists "must be determined by a good-faith analysis of all

-3-

information known to the insured or all information reasonably ascertainable by inquiry and investigation." *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 512 P.2d 403, 407 (Kan. 1973). However, the insured has the burden of proving that the alleged loss falls within the general coverage provisions of the policy, *Harris v. Richards*, 867 P.2d 325, 328 (Kan. 1994), and where a petition alleges an act that clearly is not covered, there is no potential of liability and thus no duty to defend, *Spivey*, 865 P.2d at 188.

The Personal Liability Coverage section of the Raineses' homeowners' policy provides, in relevant part:

> If a claim is made or a suit is brought against any insured for damages because of . . . **property damage caused by an occurrence to which this coverage applies**, we will:
>
> > 1. pay up to our limit of liability for the damages for which the insured is legally liable; and
> >
> > 2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent.

(emphasis added). The homeowners' policy defines "occurrence" as "an accident, including exposure to conditions[,] which results in: . . . property damage." In turn, "property damage" is defined as "physical damage to or destruction of tangible property, including loss of use of this property." Neither party argues that the terms of the Raineses' umbrella policy are materially different from those of their homeowners' policy, and, following the parties' lead, we subject the two policies to the same analysis.[3]

---

[3] The umbrella policy provides that Safeco "will pay on behalf of the insured for the ultimate net loss in excess of the retained limit which the insured is legally obligated to pay as damages because of covered personal injury or property damage caused by an occurrence." "Occurrence" is defined as "an accident, including

-4-

Because the undisputed facts in the present case do not suggest even a remote possibility of coverage under Kansas law, we agree with the district court that, as a matter of law, Safeco did not breach the policies by declining to defend the Raineses in the underlying suit. The policies' language unambiguously cabins Safeco's duty to defend and indemnify to cases where the insured is exposed to liability for "property damage" caused by an "occurrence." The Raineses argue that the definition of "occurrence" is ambiguous because it defines the term as "an accident" but leaves "accident" undefined. Thus, they assert, the definition should be construed favorably to include the wrongdoing alleged in the underlying suit. Although at least one federal district court interpreting Kansas law has held squarely that "negligent misrepresentation does not constitute an 'accident,'" *U.S. Fid. and Guar. Co. v. Dealers Leasing, Inc.*, 137 F. Supp. 2d 1257, 1262 (D. Kan. 2001), we need not decide that issue because, in any event, Lyons did not seek to hold the Raineses liable for "property damage" caused by their alleged wrongful conduct, *see St. Paul Fire & Marine Co. v. Lippincott*, 287 F.3d 703, 705 (8th Cir. 2002) (declining to address whether "negligent misrepresentation . . . qualifies as an 'occurrence'" under Missouri law "because the [underlying] judgment was clearly not a recovery for 'property damage' under the policies"). Rather, each of Lyons's three claims sought damages for economic harm arising from the Raineses' alleged "statements and concealments" concerning the property's condition. Second Am. Pet. Dam. ¶ 29, *Lyons v. Raines*, No. 01-05511 (Dist. Ct. of Johnson Cnty., Kan. June 19, 2002) (fraud claim); *see also id.* ¶¶ 32-35 (pleading negligent misrepresentation and alleging "[a]s a direct and proximate result of defendants' false representations . . . , [Lyons] has suffered considerable damages"); *id.* ¶¶ 39-42 (pleading breach of contract on the basis of the Raineses' alleged failure to disclose

_____

continuous or repeated exposure to substantially the same general harmful conditions, which results, during the coverage period, in . . . property damage." "Property damage" is defined as "physical injury to or destruction of tangible property including loss of its use."

"all material defects, conditions and facts . . . which may materially affect the value of the property").

In near-identical circumstances, the Kansas Court of Appeals has held that an underlying claim alleging negligent misrepresentation exposes the defendant to liability for economic loss, not damage to tangible property. In *Bush v. Shoemaker-Beal*, 987 P.2d 1103 (Kan. Ct. App. 1999), purchasers of a residence with undisclosed termite damage brought an action claiming negligent misrepresentation against the sellers, and they obtained a default judgment. *Id.* at 1104. The purchasers subsequently commenced garnishment proceedings against the issuer of the sellers' rental dwelling policy. Interpreting policy terms indistinguishable from those at issue here, the Kansas Court of Appeals concluded that an action claiming negligent misrepresentation fell outside the policy's coverage because the property's damaged condition "was not caused by the negligent misrepresentations." *Id.* at 1105 ("[T]here is no coverage because [the purchaser] seeks economic damages, not property damages."); *see also Dealers Leasing, Inc.*, 137 F. Supp. 2d at 1261; *Lininger v. State Farm Fire and Cas. Co.*, 1998 WL 684239, at *3 (D. Kan. Sept. 11, 1998); *Safeco Ins. Co. of Am. v. Tozier*, 1994 WL 476304, at *3-4 (D. Kan. Aug. 16, 1994). Given the coincident facts and policy terms at issue in *Bush*, we find the reasoning of the Kansas Court of Appeals to supply particularly apposite guidance in the present case. Accordingly, in the absence of "persuasive data that the highest court of the state would decide otherwise," *West*, 311 U.S. at 237, we conclude that the Kansas Supreme Court would hold that Lyons's underlying suit did not seek damages for covered "property damage."

The Raineses endeavor to counter *Bush* and its accompanying host of federal district court authority by asserting that Lyons sought more than damages for economic harm because she included "allegations of extensive damage to the property." We disagree. The notion that Lyons's reference to the property's condition converts her claim into one seeking recompense for "property damage" is

implausible, particularly in light of her allegations that she was injured by misstatements concerning the property's value. More importantly, this theory was flatly rejected by the District Court for the Southern District of Mississippi in a case later expressly approved by the Kansas Court of Appeals in *Bush*. *See State Farm Fire and Cas. Co. v. Brewer*, 914 F. Supp. 140 (S.D. Miss. 1996), *cited in Bush*, 987 P.2d at 1105; *see also Tozier*, 1994 WL 476304, at *4. The insured home sellers in *Brewer* argued that a suit alleging misrepresentation and fraud sought damages for covered property damage, "point[ing] to the fact that the [purchasers] complain of a home irreparably damaged by termites." 914 F. Supp. at 142. The court determined, however, that "the claims sound in negligent and intentional misrepresentation and fraud," and, accordingly, that the damages sought "have no basis in property damage . . . and as such do not fall within the scope of coverage." *Id.* Likewise here, the Raineses cannot transform an action seeking damages for economic loss into one seeking damages for harm to tangible property by mere *ipse dixit*.[4]

For the foregoing reasons, we affirm the district court's grant of summary judgment to Safeco.

_____

_____

[4] We also reiterate that whether the water leakage at the Overland Park property constitutes "property damage" is not at issue in this case because it is not the harm for which Lyons sought to hold the Raineses liable. Again, Lyons sought damages for economic loss resulting from alleged misstatements and concealments concerning the property's condition, *see* Second Am. Pet. Dam. ¶¶ 30, 35, 42, *Lyons v. Raines*, No. 01-05511, *not* for "physical damage to or destruction of" the property.