# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1282
_____

Broadway Ford Truck Sales, Inc.

*Plaintiff - Appellant*

v.

Depositors Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 21, 2023
Filed: December 13, 2023

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

KELLY, Circuit Judge.

After Broadway Ford Truck Sales, Inc., a car dealership in St. Louis, Missouri, suffered significant fire damage to its business premises, it filed claims under its insurance policy issued by Depositors Insurance Company. Unable to resolve their disputes over coverage, Broadway Ford filed suit against Depositors, alleging state law claims of breach of contract and vexatious refusal to pay. The district court granted summary judgment to Depositors. Broadway Ford appeals.

## I.

In September 2017, a fire broke out at Broadway Ford's business premises, resulting in direct physical loss. At the time, Broadway Ford had an insurance policy with Depositors that provided two types of coverage relevant to this dispute: coverage for loss or damage to its Building and Business Personal Property (Building/Property) and coverage for lost Business Income and Extra Expenses (BI/EE) incurred due to a suspension of operations.

Five months after the fire, Depositors had still not processed Broadway Ford's claims for property damage, and they were assigned to a different claims representative. Nineteen months after the fire, in March 2019, the parties entered into a Limited Settlement Agreement and Release of Disputed Property Damage Claims (LSA). Pursuant to the LSA, the parties expressed the intent "to compromise and resolve their disputes in connection with [Broadway Ford's] claims . . . under the coverages for Buildings and Business Personal Property under the Policy." The parties agreed that Depositors would pay $4,218,624.25 for "damage to the insured's building and business personal property arising as a result of [the 2017 fire]." As to Broadway Ford's BI/EE claims, the LSA stated that those "remain[ed] open and [would] not be included in this Agreement."

The LSA also contained a Release, pursuant to which Broadway Ford agreed to "release[] and forever discharge[]" Depositors from:

> [A]ny and all claims, demands[,] obligations, or causes of action of any nature whatsoever, whether based on contract indemnity, breach of contract, tort (including breach of the implied covenant of good faith and fair dealing), bad faith, any other theory of recovery and whether for compensatory or punitive damages, for damage to [Broadway Ford's] building and business personal property under the Building and Business Personal Property Coverage under the Policy arising out of [Broadway Ford's] property damage claims and the losses as a result of the Incident and related thereto or any obligations of the Parties—with the exception of [Broadway Ford's] claims for Business Income and

Extra Expense[1] which are not included or made a part of this Agreement and remain open.

Ultimately, the LSA did not resolve the parties' disputes and Broadway Ford sued Depositors. Broadway Ford's complaint contained two counts, advancing related legal theories. First, Broadway Ford alleged that Depositors had breached the policy's implied covenant of good faith and fair dealing. Second, it alleged that Depositors' conduct amounted to vexatious refusal under Missouri law.

Depositors filed two rounds of dispositive motions. Prior to the close of discovery, Depositors first moved for partial summary judgment on Broadway Ford's vexatious refusal claim. Depositors argued that Broadway Ford released this claim when it entered the LSA. The district court[2] granted the motion, but only to the extent that Broadway Ford raised a vexatious refusal claim based on Building/Property coverage. The court denied the motion as to Broadway Ford's BI/EE claims. The court noted that the parties "were two commercial entities seeking to resolve certain disputed claims (Building and Business Personal Property) [through settlement] while carefully stating that the Business Income and Extra Expense issues had not been settled." The court concluded that the broad language of the LSA "unequivocally release[d]" any vexatious refusal claim related to Building/Property coverage. But the district court reasoned that it was at least unclear whether the LSA also released a vexatious refusal claim based on Depositors' handling of the BI/EE claims.

---

[1]The policy defines "Business Income" as "Net Income that would have been earned" but for the "Covered Cause of Loss;" "[n]ecessary continuing normal operating expenses," and "Rental Value." The policy defines "Extra Expense" as "necessary expenses" incurred only because of the "Covered Cause of Loss" that resulted in "direct physical loss or damage to the property." The policy only covers Business Income and Extra Expense "occur[ing] within 12 consecutive months following the date of direct physical loss" that triggers the coverage.

[2]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

After additional discovery, Depositors again moved for summary judgment, this time on both of Broadway Ford's claims. Depositors pointed out that BI/EE coverage under the policy was limited to the first twelve consecutive months following the fire. Yet, Broadway Ford sought BI/EE payments beyond the one-year limit, arguing it could do so based on Depositors' "undue delay" in processing its Building/Property claim. Because the LSA effected a release of all claims based on that very delay, Depositors argued, both of Broadway Ford's claims were released and settled and could not be pursued in litigation.

Broadway Ford opposed the motion, arguing that it was not seeking additional payments under the policy, seeking instead "its lost income and extra expenses" traceable to Depositors' "delay occurring over a period of nineteen months." In Broadway Ford's view, the Release in the LSA applied only to claims for property damage, and its breach of contract claim was for additional expenses and lost income.

The district court granted Depositors' motion, finding that Broadway Ford's complaint was foreclosed by the LSA. Broadway Ford timely appealed.

II.

We review the grant of summary judgment de novo, including the district court's application of state substantive law,[3] Raines v. Safeco Ins. Co. of Am., 637 F.3d 872, 875 (8th Cir. 2011) (citation omitted), and its construction of a settlement agreement, Cromeans v. Morgan Keegan & Co., 859 F.3d 558, 566 (8th Cir. 2017) (citation omitted). We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. Mackey v. Johnson, 868 F.3d 726, 729 (8th Cir. 2017) (citing Malloy v. U.S. Postal Serv., 756 F.3d 1088, 1090 (8th Cir. 2014)).

---

[3]The parties agree that Missouri law governs this dispute.

"Summary judgment should be utilized only in the case where no material facts are genuinely disputed." Miller v. Nw. Mut. Life Ins. Co., 392 F.3d 973, 975 n.2 (8th Cir. 2004); see also Chavis Van and Storage of Myrtle Beach, Inc., v. United Van Lines, LLC, 784 F.3d 1183, 1188 (8th Cir. 2015) ("Under Missouri law, summary judgment is appropriate [in a contract case] where the language of the contract is clear and unambiguous such that the meaning of the portion of the contract in issue is so apparent that it may be determined from the four corners of the document." (alteration in original) (quoting Deal v. Consumer Programs, Inc., 470 F.3d 1225, 1229 (8th Cir. 2006))).

The parties agree that the Release in the LSA does not apply to any "claims for Business Income and Extra Expense arising from the property damage to [Broadway Ford's] building as a result of [the fire.]" These claims were expressly "not included or made a part of [the LSA] and remain[ed] open." And it is undisputed that coverage under the Policy for BI/EE losses is limited to the "12 consecutive months following the date of direct physical loss," that is, from the date of the 2017 fire.

Broadway Ford concedes that Depositors timely resolved its BI/EE claims under the Policy, and it disavows any claim for BI/EE coverage. Instead, Broadway Ford identifies one breach of contract: Depositors' undue delay in processing Broadway Ford's Building/Property claims. But Broadway Ford gave up the opportunity to file any claims "under the Building and Business Personal Property Coverage under the Policy" when it entered into the LSA.[4] Broadway Ford attempts

---

[4]Broadway Ford argues that the Release's specific language conflicts with its general provisions. But reading the Release as a whole, as we must do, see Allison v. Flexway Trucking, Inc., 28 F.3d 64, 67 (8th Cir. 1994), the parties released "any and all claims" or "causes of action of any nature whatsoever," or "arising out of" Broadway Ford's Building/Property claims under the policy, or "related thereto." This reading is further supported by the Recitals in the LSA memorializing the parties' intent. See supra Part I; Anderson v. Curators of the Univ. of Mo., 103 S.W.3d 394, 399 (Mo. Ct. App. 2003) ("Principles applicable to contractual agreements govern our interpretation of . . . releases or settlement agreements, and

to seek additional compensatory damages in the form of the "business income" it lost and the "extra expenses" it incurred as a result of Depositors' alleged mishandling of its Building/Property coverage claim.[5] Whatever the viability of such extracontractual damages as a general matter, Broadway Ford unambiguously released such claims in the LSA. See Aziz v. Allstate Ins. Co., 875 F.3d 865, 869 (8th Cir. 2017) ("Under Missouri law, vexatious refusal is derivative of a breach of contract claim [and] there can be no recovery for vexatious refusal where there is no judgment for the plaintiff on the insurance policy.").

### III.

We affirm the judgment of the district court.

_____

---

our primary goal is to enforce the parties' intended agreement." (first citing Andes v. Albano, 853 S.W.2d 936, 941 (Mo. banc 1993); and then citing Baker-Smith Sheet Metal, Inc. v. Bldg. Erection Servs. Co., 49 S.W.3d 712, 715 (Mo. Ct. App. 2001))).

[5]The terms "Business Income" and "Extra Expense" are capitalized throughout the LSA and the policy. Broadway Ford's complaint, which does not mention the LSA, refers to "business income and extra expenses," all in lowercase. Borrowing the policy's language, but not its meaning, Broadway Ford seeks to recover damages beyond the scope of the LSA's unambiguous carveout.