# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 23-1807

———————————————

Bradshaw Family Trust Inc., doing business as Hunton Office Supply Inc.

*Plaintiff - Appellant*

v.

Twin City Fire Insurance Company

*Defendant - Appellee*

————————

Appeal from United States District Court
for the Eastern District of Arkansas - Delta

————————

Submitted: January 10, 2024
Filed: June 26, 2024

————————

Before SMITH, Chief Judge,[1] GRUENDER and SHEPHERD, Circuit Judges.

————————

SMITH, Chief Judge.

In June 2019, the Bradshaw Family Trust Inc. (Trust), doing business as Hunton Office Supply Inc. (Hunton), renewed a business owner's policy on its office supply store building in Forrest City, Arkansas. The policy was effective until June

---

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

12, 2020, and included a building replacement cost of $1,378,000 and personal property replacement cost of $386,700. On the night of April 28, 2020, Hunton's building sustained wind damage from a storm. After learning of the damage, Terry Bradshaw,[2] the beneficiary and trustee of the Trust that operated Hunton, sought an insurance payout to cover the building's repairs. Twin City Fire Insurance Company (Twin City) only paid a fraction of what Bradshaw was expecting. A dispute arose surrounding the effective date of proposed policy changes that culminated in Bradshaw suing Twin City. Twin City moved for summary judgment, arguing that it did not breach the insurance contract. The district court[3] granted Twin City's motion for summary judgment. Bradshaw appeals, and we affirm.

## I. *Background*

In January 2020, Bradshaw texted Cole Schanandore, an employee of Ott Insurance, about reducing the insurance on Hunton's building for financial reasons. Ott Insurance, an independent insurance agency, worked with multiple insurance companies to give policy options to its customers. Bradshaw texted Schanandore to "drop the coverage on the building to $250,000."[4] R. Doc. 11-4, at 3.

Ott Insurance emailed Twin City requesting a reduction of the building's coverage amount to $250,000. Twin City requested information about why Hunton wanted to lower the insurance coverage. Schanandore explained that "[i]f a major loss were to happen, [Hunton] could make do with a smaller space. With the parents aging out of the business, the kids would not rebuild the entire 15,000 sq ft." R. Doc. 11-5, at 3. Schanandore reiterated, in an email to a coworker, the motivation for the

---

[2]This opinion uses "Bradshaw," "Trust," and "Hunton" interchangeably.

[3]The Honorable James M. Moody Jr., United States District Judge for the Eastern District of Arkansas.

[4]Bradshaw contends that he understood the coverage would be dropped on the renewal date.

drop in coverage and said, "If the building was destroyed, [Hunton] would only rebuild part of it." R. Doc. 11-5, at 8.

Twin City eventually agreed to lower the policy coverage to $450,000. On April 8, 2020, Twin City sent the following policy letter to Ott Insurance:

> We have completed this quote using an effective date of 4/1/2020 which amended the building coverage limit to $450,000 ACV [actual cash value]. The quote resulted in $532.00 of return premium (pro-rated). Be advised that this is a quote only and no coverage is bound. This would result in a total estimated annual policy premium of $5,066.00. We also quoted the change on the renewal effective 6/12/2020 and it results in a return premium of $3,089.00 and a total estimated annual policy premium of $5,508.00.

R. Doc. 11-5, at 12. Schanandore texted Bradshaw a PDF of the policy letter and explained that Twin City would only agree to reduce the coverage to $450,000.[5] Schanandore then asked Bradshaw, "Do you want us to move forward with $450,000?" R. Doc. 11-4, at 4. Bradshaw responded, "Yes that will help and we could rebuild more than enough with that if something ever happened." *Id.* At no point during the text message exchange did Bradshaw indicate that he had trouble viewing the PDF.

After receiving Bradshaw's permission to proceed, Schanandore instructed Twin City to modify the policy. Schanandore told Twin City, "Please endorse the policy as quoted." R. Doc. 11-5, at 15. Twin City then put an endorsement into Hunton's pre-existing policy. The endorsement had an effective date of April 1, 2020; had a process date of April 8, 2020; and listed Ott Insurance as Hunton's agent. Further, the endorsement read, "[B]uilding limit of insurance is changed from $1,378,000 to $450,000." R. Doc. 11-1, at 159. On April 22, 2020, Twin City issued

_____

[5]Bradshaw admits receiving the text and attached PDF but claims that the PDF would not open.

a bill to Hunton that noted a reduction of $532.00 in the premium, leaving an account balance of $178.89. Hunton paid the remaining balance of $178.89 on May 12, 2020.

On April 28, 2020, a windstorm damaged Hunton's building, and Bradshaw sought payment from Twin City. Bradshaw reported the damage to Ott Insurance; it then reported the damage to Twin City. Twin City estimated the building's replacement cost to be $1,978,324.07 and the ACV cost of the loss to be $1,583,792.91. Twin City paid Hunton $481,759.00. Bradshaw disputed that the policy's coverage was reduced from $1,378,000.00 to $450,000.00 and requested policy reformation. Twin City denied Hunton's reformation request. According to Twin City, Ott Insurance

> came to [Twin City] in early April wanting to reduce, per the insured's request, the building limits from $1,378,000 to $250,000. . . . It was eventually agreed that the building limit would be revised to a [replacement value] of $450,000. We sent a quote letter to the agency . . . which has an effective date of April 1, 2020 . . . . The agent[']s response was to please endorse as quoted . . . .

R. Doc. 11-5, at 28. Bradshaw, unhappy with the reformation decision, sued Twin City for the difference between $450,000 and $1,378,000.

Bradshaw contended that, at the time of the loss, the policy provided $1,378,000 in coverage for the building, and he sought compensatory and punitive damages. After Twin City moved for summary judgment, Bradshaw dismissed all his claims, except for breach of contract, and ceased seeking punitive damages. Bradshaw alleged that he never requested an immediate drop in the policy's coverage; instead, he merely inquired about dropping coverage in the future. The district court granted Twin City's motion for summary judgment.

## II. *Discussion*

On appeal, Hunton argues that the policy endorsement is invalid because there was no meeting of the minds, the endorsement was never delivered to him, and the

extent of Schanandore's authority is a material fact question precluding summary judgment.

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015) (quoting *Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 874 (8th Cir. 2011)). This court "review[s] a district court's grant of summary judgment de novo, including its interpretation of state law." *Id.* (quoting *Raines*, 637 F.3d at 875). Because Arkansas law governs the substantive aspects of this appeal, we apply *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

> Under *Erie*, we are obligated to apply governing precedent from the Arkansas Supreme Court. When there is no state supreme court case directly on point, our role is to predict how the state supreme court would rule if faced with the same issue before us. In other words, we must make an Erie-educated guess when the law of the forum state is not crystal clear. We owe no deference to a district court's determination of, or predictions about, state law.

*Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010) (cleaned up). But when an issue involves a procedural rule, we adhere to the Federal Rules of Civil Procedure. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) ("We . . . apply federal procedural rules but Arkansas substantive law." (citations omitted)).

## A. *Agency*

Bradshaw insists that Ott Insurance lacked authority to request a policy change on behalf of Hunton that would become effective before the policy's renewal date. He contends that the question of Ott Insurance's authority is a question of fact inappropriate for disposition by summary judgment. We have recognized that "[a]lthough the existence of an agency relationship is generally a question of fact, summary judgment may be appropriate if the evidence is conclusive." *Child.'s*

*Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1021 (8th Cir. 2001). The Arkansas Supreme Court shares this understanding. *See Campbell v. Bastian*, 365 S.W.2d 249, 251 (Ark. 1963) ("[O]rdinarily, agency is a question of fact to be determined by the jury; but agency becomes a question of law for the court when the material facts concerning it are not disputed and only one reasonable conclusion can be drawn therefrom.").

No genuine issues of material fact prevented the district court from evaluating Ott Insurance's relationship to Hunton. Bradshaw disputes whether his text messages to Schanandore gave Ott Insurance authority to bind Hunton to the policy letter's terms, namely the letter's effective date of April 1, 2020. We have said that

> [u]nder Arkansas law . . . apparent authority is such authority as a principal proclaims or permits, such authority which a principal by lack of care causes or allows, or such authority as a reasonably prudent man using diligence and discretion would naturally suppose. Two elements must be established to support a showing of apparent authority: (1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority; and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. If an agent acts within the scope of his apparent authority, his acts bind the principal, whether actually authorized or not, and even if contrary to express direction.

*Wal-Mart Stores, Inc. v. Crist*, 855 F.2d 1326, 1331 (8th Cir. 1988) (internal quotation marks and citations omitted).[6]

---

[6]The law of apparent authority in Arkansas has not changed since our decision in 1988. *See Terra Land Servs., Inc. v. McIntyre*, 572 S.W.3d 424, 433 (Ark. Ct. App. 2019) ("Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing, such authority as he appears to have by reason of the actual authority which he has, such authority as a reasonably prudent man, using diligence and discretion, in view

The text message exchange between Bradshaw and Schanandore establishes that Schanandore, and thus Ott Insurance, had apparent authority to bind Hunton to the policy endorsement. First, Bradshaw "knowingly permitted" Schanandore to agree to the policy endorsement on Hunton's behalf. *Crist*, 855 F.2d at 1331. Schanandore texted Bradshaw, "They have agreed to $450,000. Do you want us to move forward with $450,000?" R. Doc 23-6, at 4. Bradshaw replied, "Yes that will help and we could rebuild more than enough with that if something ever happened." *Id.* Second, Twin City knew that the insured, Hunton, was acting through Ott Insurance. Twin City only spoke with Ott Insurance employees throughout the modification process, and Twin City listed Ott Insurance as Hunton's agent on the endorsement letter included in the policy. Given these facts, Ott Insurance had apparent authority to agree to the policy endorsement on Bradshaw's behalf.

Further, it was within Schanandore's scope of authority to bind Hunton to the policy letter's terms. *Crist*, 855 F.2d at 1331. Bradshaw cemented Schanandore's scope of authority by replying "Yes" to Schanandore's text message asking whether to "move forward" on the $450,000 coverage. R. Doc 23-6, at 4. Therefore, the only reasonable conclusion from the record is that Ott Insurance was Hunton's agent.

## B. *Meeting of the Minds*

Bradshaw asserts that he did not intend to bind Hunton to a policy change that would become effective before the renewal date of June 12, 2020. Bradshaw contends that he and Schanandore never agreed as to when the discussed policy changes would take effect.

Under Arkansas law, a contract requires a meeting of the minds. *Williamson v. Sanofi Winthrop Pharms., Inc.*, 60 S.W.3d 428, 434 (Ark. 2001). "[T]he element of a 'meeting of the minds' . . . necessarily requires an individual inquiry into each party's understanding of the terms of the alleged contract . . . ." *Id.* This is "an

---

of the principal's conduct, would naturally suppose the agent to possess." (quoting *Mack v. Scott*, 323 S.W.2d 929, 931–32 (Ark. 1959))).

objective test" based on "objective indicators of agreement and not subjective opinions." *Ward v. Williams*, 118 S.W.3d 513, 520 (Ark. 2003).

Bradshaw asserts that the text messages do not indicate an objective intent to change the insurance policy immediately; the record belies his contention. Bradshaw correctly notes that the text messages themselves do not specifically state the desired effective date of the policy change. Nonetheless, based on the record, the only reasonable conclusion is that he intended the policy changes to take effect immediately. First, Bradshaw sought a reduction in coverage to lower Hunton's insurance expenditure. Extending the existing coverage, and thus the higher premium, to the renewal date would not advance that goal. Second, after Bradshaw received the PDF of the policy letter that stated an effective date of April 1, 2020, he instructed Schanandore to agree to the policy. When Schanandore texted, "Ok, we will get it changed," Bradshaw did not respond clarifying that the policy should be changed on the renewal date. R. Doc 23-6, at 4. Third, on April 22, 2020, two weeks after the last text exchange with Schanandore—and five days before the storm damage to the building—Twin City billed Hunton according to the new policy change. The bill reflected credits applied to Hunton's account stemming from the reduction in premium because of the policy change. Bradshaw did not inquire about the lower bill amount with Twin City or Schanandore. Bradshaw's actions were consistent with a meeting of the minds to have an immediate effective date for the policy.

Next, Bradshaw argues that because he could not open the PDF of the policy letter, he did not know that the policy's effective date was April 1, 2020. But whether Bradshaw viewed the contents of the policy letter is immaterial. The Arkansas Supreme Court has stated that, absent some inequity, "one who signs a contract, after an opportunity to examine it, cannot be heard to say that he or she did not know what it contained." *Neill v. Nationwide Mut. Fire Ins. Co.*, 139 S.W.3d 484, 487 (Ark. 2003). Neither Bradshaw nor Twin City argues that fraud or a similar inequity occurred. *See id.* Bradshaw was under no obligation to agree to the PDF's contents without first reading the letter. Because Bradshaw had an opportunity to examine

the PDF, it is of no moment that he now says, "[I] did not know what it contained." *Id.*[7]

Finally, Bradshaw relies on *Moss v. Allstate Insurance Co.*, 776 S.W.2d 831 (Ark. Ct. App. 1989), to support his argument. We find such reliance unpersuasive. First, *Moss* is an Arkansas intermediate appellate court decision that is not binding on our *Erie* analysis. *Blankenship*, 601 F.3d at 856. Second, *Moss* is distinguishable. In *Moss*, the court examined a form requesting a change to an insured's auto insurance. *Moss*, 776 S.W.2d at 832. The question there was whether the date on that form referred to the form's completion date or the effective date of the requested change. *Id.* at 834. The court concluded that it could not

> determine whether it was the intent of the parties that [Moss's] request for [insurance] modification be applied retroactively. In answers to interrogatories propounded by [Moss], [Allstate] stated that Phyllis Moss executed a form "dropping" the comprehensive and collision coverage. In [her] motion for summary judgment, [Moss] stated that [she] "requested to amend" the insurance contract by deleting the provision for collision coverage.
>
> Nor can intent of the parties regarding retroactive application be ascertained from [Allstate]'s "Customer Service Request" form executed by [Moss]. On its face, the form is merely a "request" for a change in coverage. However, the request form as executed by Phyllis Moss indicates that it is "effective" October 7, 1987, at 10:15 a.m. Whether this is the effective date of the request or a term providing for retroactive application of the modification is unclear. . . . Therefore, the intent of the parties at the time they entered into the agreement is [a] genuine issue of material fact to be determined by the factfinder.

*Id.* (spacing altered). The facts in *Moss* supported two different interpretations that were both reasonable. Here, however, the policy letter sent to Schanandore clearly

---

[7]"When an otherwise valid endorsement is issued, it becomes a part of the insurance contract as if it were actually incorporated therein." *Schultz v. Farm Bureau Mut. Ins. Co.*, 940 S.W.2d 871, 875 (Ark. 1997).

stated: "We have completed this quote using an effective date of 4/1/2020." R. Doc. 11-5, at 12. At no point during the modification process did Bradshaw express concern or confusion with the policy letter's effective date. Bradshaw's circumstances do not resemble those presented in *Moss*.

## C. *Delivery of the Endorsement*

Bradshaw's last argument is that because he did not receive or sign the endorsement, the policy never changed. Under Arkansas law, Bradshaw did not have to receive or sign the endorsement because he requested the policy change. Arkansas law states:

> Forms or endorsements that reduce, restrict, or modify the original policy coverage shall be accepted and signed by the named insured if those forms or endorsements were issued:
>
> > (A) After the policy inception date but before renewal of the policy; and
> >
> > (B) *Not at the request of the named insured . . . .*

Ark. Code. Ann. § 23-79-307(a)(3) (2020) (emphasis added). Bradshaw tries to get around the statute by contending that he did not request a policy change that would take effect on April 1, 2020. But as discussed, undisputed objective indicators from the record show that Bradshaw wanted the policy to change immediately.

## III. *Conclusion*

We affirm the district court because Ott Insurance had apparent authority to represent Hunton, the objective indicators show that Hunton desired to change the insurance policy immediately, and Arkansas law did not require Hunton to accept or sign the policy endorsement.

_____